UNITED STATES of America,
Plaintiff-Appellee,

v.

Gustavo PEREZ–ROBLES, a/k/a Juan
Sanches Torres and LaRana,
Defendant-Appellant.

No. 83–1100.

United States Court of Appeals,
Fifth Circuit.

Oct. 17, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1297.

Howard Alan Borg, Court appointed, Fort Worth, Tex., for defendant-appellant.

E. Michael Sheehan, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before RUBIN, TATE, and JOLLY, Circuit Judges.

TATE, Circuit Judge:

The defendant ("Perez") was convicted on jury trial of five counts of aiding and abetting the transportation of illegal aliens within the United States, 8 U.S.C. § 1324(a)(2), 18 U.S.C. § 2, as well as of one count of illegal re-entry as a previously deported alien, 8 U.S.C. § 1326. On appeal, Perez forcefully contends that the trial court erred in denying his motion for a mistrial when a government-agent witness interjected prejudicial "other-crime" testimony by an unresponsive answer. We affirm, finding no significant possibility that the unresponsive and grossly improper answer of the government agent (which we do not condone) had a substantial impact on the jury, due to the overwhelming evidence of guilt.

The defendant Perez and three other individuals were indicted for illegal transportation of five Mexican aliens within the United States. They were arrested in two cars stopped in Texas, in one of which Perez was riding in the passenger side of the front seat. Perez' attempted defense at trial was that he was one of the aliens being transported, not part of the group that had illegally brought them from within Mexico and were transporting them in the United States.

Four of the aliens being transported testified at trial as government witnesses.[1]

---

1. The fifth, Martin Bravo, a teenage boy, had been repatriated to Mexico soon after the arrest because of his tender age (a policy of the Immigration Service). Perez contends that

there was insufficient evidence of Bravo's illegal alienage to support the conviction of transporting him (Count 1). We find no merit to this contention. Two of the Mexican aliens

They testified that all five aliens were picked up in Mexico by two men in a pickup truck, one of whom (on the passenger side) was Perez. They were brought to the Rio Grande, where (at least two testified) both Perez and the other man showed them where to cross the river into the United States. They then walked to a road, where they were left, while the defendant Perez went away and returned the next morning with an automobile. Perez then drove with them to meet another automobile, into which two of the aliens transfered, prior to the stop of both cars and the arrest stop for immigration offenses. One of the witness aliens (Placencia) testified that an unidentified contact made by him at the plaza in the Mexican town had told him that Perez could bring him to the United States when they found Perez there.

This evidence was essentially uncontradicted, and we think its overwhelming weight is of Perez' guilt as an active aider and abetter of the illegal transportation of aliens in the United States. We find little merit to Perez' contention that, at most, the proof presented a close case of sufficiency, considering the interest of the Mexican aliens in testifying favorably for the government, and considering that two of them did not testify positively that Perez as well as the other man had guided them across the Rio Grande.

Because of this overwhelming evidence of guilt, we do not find reversible merit to Perez' principal contention on appeal: that the district court erred in denying a mistrial when the government immigration officer, in answer to a question as to what he had done when he went to the jail, testified that, previously to going there, another immigration officer had identified Perez "as a subject he had encountered several times previously as a defendant in other smuggling cases." The district court sustained the defendant's objection to this unresponsive hearsay reply, which improperly injected extraneous offenses into the evidence. The trial judge agreed that, even if the

hearsay-reported incidents could be admissible as a closely related extraneous offense, it would be more prejudicial than probative, and he gave strong admonitions to the jury to disregard it. However, he then overruled Perez' motion for a mistrial.

Under somewhat similar circumstances, where likewise an immigration agent improperly injected prejudicial information by an unresponsive answer to a question, we recently reversed a conviction. *United States v. Escamilla,* 666 F.2d 126 (5th Cir. 1982). We there held that the trial judge's admonitions to disregard the improper testimony were insufficient to erase the prejudice and that thus a mistrial was required. In so holding, we summarized the applicable jurisprudential principles:

> [S]triking erroneously admitted evidence and admonishing the jury to disregard it normally serves to cure the error. *United States v. Rojas,* 537 F.2d 216, 222 (5th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *United States v. Troise,* 483 F.2d 615, 618 (5th Cir.), *cert. denied,* 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973). However, where evidence is so prejudicial that the jury will unlikely be able to erase it from their minds, then a mistrial should be ordered. *United States v. Klein,* 546 F.2d 1259, 1263 (5th Cir.1977); *United States v. DeDominicis,* 332 F.2d 207, 210 (2d Cir.1964). As we have previously stated,
>
> To require a new trial, the prejudicial effect of improper matter, viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the ... statement had a substantial impact upon the verdict of the jury.

*United States v. Rojas, supra; United States v. Rodriguez,* 524 F.2d 485, 487 (5th Cir.1975), *cert. denied,* 424 U.S. 972, 96 S.Ct. 1474, 47 L.Ed.2d 741 (1976); *United States v. Arenas-Granada,* 487 F.2d 858, 859 (5th Cir.1973). The deter-

---

(Rosas and Placencia) testified that they had first met the young boy four or five days prior to the present illegal journey into the United

States, when all three of them had been deported on the same bus after an earlier unsuccessful attempt to come into the United States.

mination of the impact which a prejudicial statement has upon a jury must be made on a case by case basis.

666 F.2d at 128.

Applying these jurisprudential tests to the present case, we find that the prejudicial effect of the present improper testimony was overwhelmed by virtually uncontradicted proof of guilt, and that, therefore, the grossly improper unresponsive hearsay answer did not create any significant possibility of substantial impact upon the verdict of the jury. So holding, we do not condone the immigration officer's interjection by an unresponsive answer of inadmissible testimony that might prejudice the accused's right to a fair trial. We trust that the present incident and that reflected by *Escamilla* represent aberrational and inadvertent lapses by immigration-agent witnesses, so as not in the future to require deterrence through court-ordered mistrials.

For the reasons assigned, we AFFIRM the defendant's convictions.

AFFIRMED.