**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herminio HERNANDEZ,
Defendant-Appellant.**

No. 84–2218.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1985.

Haynes & Fullenweider, Jack B. Zimmermann, Clinard J. Hanby, Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, RUBIN, and JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

We reverse the conviction of Herminio Hernandez on two counts relating to possession and distribution of cocaine because the prosecuting attorney elicited inadmissible testimony from a government witness, a Drug Enforcement Administration (DEA) special agent, that U.S. Customs had identified Hernandez as a drug smuggler, the district judge overruled an objection to the testimony, and the prosecutor, in her closing argument to the jury, later emphasized this evidence, embellishing it to go even beyond the actual testimony.

Viewing the facts in the light most favorable to the government,[1] the evidence showed that an informant, Gholson, accompanied by special agent Ana Saulnier, who posed as Gholson's wife, met Hernandez by prearrangement in a coffee shop. Hernandez offered to sell them a kilo of cocaine for $52,000. Hernandez, who took the stand, denies that the conversation at the coffee shop involved controlled substances. Later Gholson and agent Saulnier, the ostensible Mrs. Gholson, driving in an automobile, met Hernandez at a service station and followed Hernandez's car to his tire shop. There, in a back room, two packages of cocaine wrapped in newspaper lay atop a television tray table. Hernandez said he did not want to transact business in the presence of a woman, so Saulnier left the room. Gholson then accepted the cocaine. As Gholson and Hernandez were proceeding to the place where payment was to be made, Hernandez was arrested.

Hernandez testified that he had been "set up" by Gholson. The conversation in the coffee shop, he said, concerned leasing a room at his tire shop to Gholson to be used to make pornographic films. He had led Gholson and Saulnier to his shop and had merely shown the room to Gholson, but he had not entered it. Hernandez, by cross-examination and other evidence, attacked Gholson's credibility. Gholson had been charged on numerous occasions with felony charges stemming from his involvement in the pornography business. He also had made his living as an informant for thirteen years, and was paid by the arrest, not the conviction. An officer of the Houston Police Department testified that his department had stopped using Gholson as an informant because they suspected him of making cases against innocent people. Thus, the case boiled down to the jury's acceptance of the version of the facts testified to by Gholson and Saulnier or Hernandez's version. Both sides, in oral argument, correctly referred to the testimony as a "swearing match."

## I.

Near the beginning of Saulnier's testimony, the following occurred:

Q. (Prosecutor) Now, Special Agent Saulnier, what first brought the attention of the Drug Enforcement Administration to Herminio Hernandez?

A. We received a referral by the U.S. Customs as Hernandez being a drug smuggler.

Mr. Suarez: Judge, may I object to this testimony as it is pertaining to matters for which this Defendant is not on trial today? It is highly prejudicial, and it is trying this Defendant for crimes other than the one he is accused of today.

The Court: I'm going to overrule the objection.

The government's argument that this testimony was not hearsay and was relevant to show Saulnier's state of mind lacks merit. Saulnier's state of mind was not at issue. The testimony was, therefore, clearly hearsay. The referral was a "statement" other than one made by Saulnier (the declarant) while testifying at trial, offered to prove the truth of the matter asserted (that Hernandez was a drug smuggler).[2] The government's protestation that the evidence was not elicited to prove Hernandez was a drug smuggler, but merely to explain the motivation behind DEA's investigation is unconvincing from both a common sense perspective, and from the government's subsequent use of that testimony. The government, as a last resort, says the testimony was merely background, but it is not permissible to lay such an invidious and prejudicial background.

The prosecuting attorney (who was not the Assistant U.S. Attorney who presented the case on appeal) was not content to leave bad enough alone. In her closing argument, she told the jury:

What kind of case has the government brought to you today? You heard testi-

---

1. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

2. *See* Fed.R.Evid. 801.

mony that this case, this defendant, was brought to the attention of the Drug Enforcement Administration through a referral from another law enforcement agency, United States Customs. And what was the nature of that referral? The nature of that referral was that this individual was a *known cocaine trafficker* [sic] .... (Emphasis added.)

This, of course, went even beyond Saulnier's testimony, which had characterized Hernandez only as a drug smuggler. The government thus relied on the evidence not as proof of Saulnier's state of mind at the inception of the investigation, but as evidence of Hernandez's guilt. This type of evidence is inadmissible under Fed.R.Evid. 802.[3]

The state of mind of the DEA agent for beginning an investigation of the defendant, was not relevant. "Even under an inclusionary approach, this purpose is inconsistent with the intended scope of the rule and therefore is impermissible."[4] There is simply no authority for the proposition that this type of evidence should be admissible as demonstrating a witness' state of mind.[5]

Finally, even if, by some stretch of the imagination, Saulnier's testimony were found to be relevant to Hernandez's scheme, intent, motive or plan, its minimal probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury,[6] and the testimony was, therefore, inadmissible under Fed.R.Evid. 403 and 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As explained by this circuit in *United States v. Wesevich*,[7] "Congress adopted an 'inclusionary approach' when it authored this rule. The wording of the rule also demonstrates that 'other crimes' evidence is admissible in situations where the mental state or action of the *defendant* is relevant."[8]

The government retreats to its line of final defense: the errors were harmless because proof of guilt was overwhelming.[9] The government relies on our decisions in *United States v. Perez-Robles*,[10] *United*

---

**3.** Rule 802 reads:
> Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.

**4.** *Id.* Cf. *United States v. Howell*, 664 F.2d 101, 105 (5th Cir.1981), *cert. denied*, 445 U.S. 1005, 102 S.Ct. 1641, 71 L.Ed.2d 873 (1982); *United States v. Webster*, 649 F.2d 346, 350–51 (5th Cir.1981) (en banc) (hearsay evidence inadmissible to prove either predisposition of defendant who raised entrapment defense or motive of government agent).

**5.** *See United States v. Wesevich, supra*, 666 F.2d 984 at 988; *United States v. Guerrero*, 650 F.2d 728, 734 (5th Cir.1981).

**6.** *See* Fed.R.Evid. 403, which provides:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence.

**7.** 666 F.2d 984 (5th Cir.1982).

**8.** *Id.* at 988 (emphasis in original) (footnote omitted).

**9.** Without adverting to the evidence that is so "one-sided," the government's entire argument on this issue is as follows:
> And even if the court's ruling was erroneous, it was surely harmless beyond all doubt in view of the overwhelming direct evidence of guilt. *Chapman v. California*, 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705] (1967); *United States v. Perez-Robles*, 718 F.2d 700, 701–702 (5th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1297 [79 L.Ed.2d 697] (1984); *United States v. Cross*, 638 F.2d 1375, 1381 (5th Cir. Unit A 1981). Cf. *United States v. Escamilla,* 666 F.2d 126, 129 (5th Cir.1982).

**10.** 718 F.2d 700 (5th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1297, 79 L.Ed.2d 697 (1984).

*States v. Cross,*[11] and *United States v. Escamilla.*[12] This reliance is misplaced, because two of these cases are readily distinguishable, and, in the third, *Escamilla,* the verdict was reversed. In *Perez-Robles* and *Cross,* the district court gave an instruction to the jury to disregard the testimony. The Hernandez objection was overruled and no instruction was given. In *Perez-Robles* the defendant did not take the stand and the government's evidence was uncontroverted. Finally, unlike the prosecutor in both *Perez-Robles* and *Cross,* the prosecutor here attempted to exploit the testimony in oral argument.

We have repeatedly warned prosecutors that it is their duty to refrain from adducing inadmissible evidence and to abstain from exaggeration in closing argument.[13] Taking into account the inadmissibility of Saulnier's testimony, the closing argument aggravated the prejudice to Hernandez and denied him the fair trial to which he is entitled.

## II.

Because the following issues were fully briefed and may arise in the event Hernandez is again tried and convicted, we address them here.

██ Hernandez contends that the district court erred in sentencing him to consecutive terms for possession and distribution of cocaine stemming from the same transaction. Although Hernandez is correct that consecutive sentences for possession and distribution may not be imposed when the only evidence of possession is possession at the time of distribution,[14] the facts here preclude the application of this principle. This is best seen by comparing the testimony about Hernandez to the facts in two other Fifth Circuit cases.

In the present case, the jury might choose to believe not only that Hernandez met Gholson and Saulnier at the coffee shop, but that he then arranged the transaction; that later that same day, he directed them to a service station where he drove by and gestured for them to follow him to his tire shop; and that once there, Hernandez took Gholson and Saulnier to the back room and displayed a package of cocaine already in the room.

These facts are on all-fours with *United States v. Foundas.*[15] There, the defendant met with undercover agents in a motel bar and arranged for the sale of cocaine. The defendant then disappeared briefly, and later rejoined the agents in a motel room where she produced the cocaine. Noting the government's contention that, during her absence, Foundas must have obtained the cocaine from a hiding place, we affirmed the separate sentences that Foundas received for possession with intent to distribute and distribution.

Both sets of facts contrast with those in *United States v. Hernandez.*[16] In *Hernandez,* the convictions were both based upon the same act. Hernandez's friend sold heroin to DEA agents. Hernandez was convicted separately for possession with intent to distribute and distribution,

---

**11.** 638 F.2d 1375 (5th Cir.1981) (admission of evidence that "other federal charges" were pending against defendant was improper, but was harmless error in light of overwhelming evidence presented in support of conviction, *and district court's admonition to jury not to consider any conduct or offense not alleged in indictment*).

**12.** 666 F.2d 126 (5th Cir.1982) (unresponsive answer of government agent implicating defendant's brother was so prejudicial as to warrant a mistrial because there was a "significant possibility" that the statement had a substantial impact upon the verdict of the jury and the other evidence of the defendant's guilt was not overwhelming).

**13.** *See United States v. Ledezma-Hernandez,* 729 F.2d 310, 314 (5th Cir.1984) (prosecutor prohibited from making arguments that go beyond evidence, mislead or inflame the jury); *United States v. Phillips,* 664 F.2d 971, 1030 (5th Cir. 1981); *United States v. Dorr,* 636 F.2d 117, 120 (5th Cir.1981).

**14.** *United States v. Hernandez,* 591 F.2d 1019 (5th Cir.1979) (en banc).

**15.** 610 F.2d 298 (5th Cir.1980).

**16.** 591 F.2d 1019 (5th Cir.1979) (en banc).

even though the only evidence of possession was his constructive possession at the time of distribution. The court concluded that Congress did not intend that a defendant be punished twice for the same sale, and remanded for resentencing.

Here, unlike *Hernandez*, there is independent evidence of Hernandez's prior possession of the cocaine prior to the actual time of distribution. As in *Foundas*, the transportation of the drugs by Hernandez to the place of distribution constituted "possession ... separate from the actual act of distribution." [17] There is sufficient evidence, therefore, independent of the distribution, that Hernandez was in possession of the cocaine at the time he negotiated in the coffee shop, and that he possessed the drug in his place of business before he distributed it in the back room. The separate and consecutive sentences for possession with intent to distribute and for distribution were properly imposed and should be affirmed.

■ Hernandez also argues that the special term of parole authorized by 21 U.S.C. § 841(b)(1)(A) is unconstitutional, and should be stricken from his sentence. This argument is without merit.

Only one federal court has questioned the constitutionality of the special parole provision of the statute. In *United States v. Tebha*,[18] the district court held that § 841(b)(1)(A) violated the fifth amendment due process clause by failing to state a fixed period of imprisonment for violation of special parole, or alternatively, for failing to give the judge specific authority to determine within statutorily defined limits the period of imprisonment for violation of special parole. The court found this scheme to be medieval, and decried giving judges the power "to impose whatever penalty they saw fit, without any guidance from the legislature as to maximum limitations." [19]

No other court has followed *Tebha*, and in fact, in dozens of cases the statute has been unhesitatingly applied. Moreover, the opinion is flawed in two respects. First, it fails to give enough weight to the inherent power of the court to impose a criminal sanction not specifically designated by the legislature when a person has committed a contempt of court. If a court has such unbridled discretion to choose and impose the appropriate sanction when its order has been violated, there is no reason why that power does not also extend to sentencing a parole violator under § 841(b)(1)(A). In both instances, the defendant has violated a direct order of the court curtailing his behavior. The opinion also ignores the issue of justiciability. "Any consideration of what sanctions may be imposed as a result of parole violation is only speculation at this time, and does not present a ripe question for decision." [20]

The judgment of conviction is REVERSED, and the case is REMANDED.

---

**17.** 610 F.2d at 302.

**18.** 578 F.Supp. 1398 (N.D.Cal.1984).

**19.** *Id.* at 1400.

**20.** *United States v. Walden,* 578 F.2d 966, 972 (3d Cir.1978); *United States v. Rea,* 532 F.2d 147, 149 (9th Cir.), *cert. denied,* 429 U.S. 837, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976).