890 F.2d 1250
 281 U.S.App.D.C. 445
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Michael R. JACK, Appellant.
 No. 88-3137.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 29, 1989.
 
 Before WALD, Chief Judge, and RUTH B. GINSBURG, Circuit Judge and DANIEL M. FRIEDMAN,* Senior Circuit Judge.
 JUDGMENT
 Per Curiam.
 
 
 1
 This case was considered on appeal from a conviction and sentencing in the United States District Court for the District of Columbia. This Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the appeal of both the conviction and the sentence be denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Michael Jack appeals from his conviction for possession with intent to distribute cocaine base and from the sentence imposed in furtherance of that conviction. Because we find that the conviction and sentence were properly imposed, we affirm them both.
 
 I. BACKGROUND[1]
 
 5
 Michael Jack was arrested at Union Station after police officers searched a tote bag he was carrying and found over fifty grams of cocaine base. Jack was subsequently charged with possession with intent to distribute fifty grams or more of a substance containing cocaine base in violation of 21 U.S.C. Sec. 841(a) and Sec. 841(b)(1)(A)(iii).
 
 
 6
 Following his arrest, Jack gave a statement to detective Donald Zattau which provided the police with the following information. Jack admitted that he had come to Washington to "bring drugs." Record for Appellant ("R.A.") 33. He explained that he met a man at the Job Corps in New York who asked him if he would like "to make quick money." R.A. 34. Jack said yes and gave the man his phone number at the Corps. The man, whom Jack testified at trial he knew as Nutt, called Jack from a pay phone outside the Corps and told him to "do the same thing that [he] did the last time." R.A. 34. Jack was instructed to wear a long black coat, pick up a red bag from locker 31 at Penn Station in New York, and take the 3:20 p.m. train to Washington. There, he was informed, he would be met by two girls; one would kiss him and the other would talk to him. Id. After giving the bag to one of the girls and receiving money in an envelope, he was to take a cab to the airport and fly back to New York. Jack admitted that he had paid his own fare to Washington, D.C. When Detective Zattau asked Jack whether he knew that drugs were in the bag, Jack replied that he knew "something" was in the bag but he did not know "where it was." R.A. 36.
 
 
 7
 At trial, Jack testified that he had come to Washington once before to deliver a similar bag to two women, in return for which he received $589. In regard to both trips, however, Jack testified that he had never opened either bag and had not seen the contents of the bag he carried on the second trip until the police opened it at the station. And although Jack admitted that he suspected, on his second trip, that the bag he was carrying might contain something valuable, he insisted that he had no knowledge that he was carrying drugs on either trip.
 
 
 8
 Pursuant to Sec. 841(b)(1)(A)(iii)'s mandatory minimum sentence for possession with intent to distribute fifty grams or more of a substance containing cocaine base, Jack was sentenced to 120 months in prison and five years supervised release.
 
 II. ANALYSIS
 
 9
 Jack argues that his conviction must be overturned for three reasons. First, he contends that the statute under which he was charged and sentenced is unconstitutionally vague and therefore violative of the Due Process Clause of the Fifth Amendment. Second, Jack contends that the evidence presented at trial was insufficient to support a conviction. Finally, Jack argues that the trial judge's instruction on deliberate ignorance was improper and constituted prejudicial error requiring reversal.
 
 
 10
 Assuming that his conviction is upheld, however, Jack argues that his sentence mandating a five year term of supervised release following a ten year minimum period of incarceration is invalid for two reasons. First, he claims that it contravenes the Eighth Amendment's prohibition of cruel and unusual punishment. In the alternative, he suggests that the court cannot properly impose a term of "probation" to be served after his term of imprisonment because of the uncertainty of punishment in the event a condition of probation is violated.
 
 
 11
 We will address each contention in turn.
 
 A. Jack's Conviction
 1. Due Process
 
 12
 Jack argues that because the term "cocaine base" is not defined in either 21 U.S.C. Sec. 841 or 21 U.S.C. Sec. 841(b)(1)(A)(iii), the statute violates due process in that it is void for vagueness, inviting arbitrary sentencing by permitting the prosecutor unfettered charging discretion based upon the government's definition of the term.[2] This argument is meritless.
 
 
 13
 In United States v. Brown, 859 F.2d 974 (D.C.Cir.1988), we rejected this contention, and we sternly admonish counsel for defendant for shirking his obligation to address this case in his brief. As counsel should well know, it is a lawyer's duty to address earlier decisions by a court that are obviously relevant to a later case being argued in that court.
 
 
 14
 In Brown, we explained that the term "cocaine base" is not vague on its face, but rather refers to "any form of cocaine with hydroxyl radical; 'cocaine base' excludes, for example, salt forms of cocaine." Id. at 976. We further said that "[t]he fact that 'cocaine base' may have various interpretations on the street does not make it incapable of objective definition by means of chemical analysis." Id. Finally, we noted that "many courts have used the phrase without a hint that it might be too vague to convey a clearly defined meaning." Id. (citing cases).
 
 
 15
 But even if the statute were vague with respect to others, it is not vague with respect to Jack, and "Sec. 841(b) must be considered as it applies to [Jack], not as it applies to others or appears in the abstract." Id. (citing United States v. Powell, 423 U.S. 87, 93 (1975)). Like the defendant in Brown, Jack was convicted of possessing a form of cocaine base known as "crack" which we recognized as the "primary target of the Narcotics Penalties Enforcement Act. There can be no doubt that whatever else [the statute] encompasses, it certainly includes the form of cocaine which [Jack] was convicted of possess[ing] with intent to distribute." Id. (citing cases).
 
 2. Sufficiency of the Evidence
 
 16
 In reviewing claims of insufficient evidence, appellate courts must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences that may be drawn from it. United States v. Sutton, 801 F.2d 1346, 1358 (D.C.Cir.1986). Even under a more lenient standard, however, Jack's conclusory contention that the evidence was insufficient to support a conviction would still be without merit.
 
 
 17
 The essential elements of the offense of possession with intent to distribute are "1) possession, 2) knowledge, and 3) the intent to distribute." United States v. Price, 869 F.2d 801, 804 (5th Cir.1989).
 
 
 18
 Jack surely cannot dispute possession, as the officers who arrested him did so only after finding approximately $11,000 worth of cocaine base weighing well over fifty grams in the tote bag Jack was carrying.
 
 
 19
 Similarly, the evidence makes clear that Jack had the requisite knowledge. Detective Zattau testified that Jack admitted in a statement that he came to Washington "to bring drugs" and that he knew "something" was in the bag. R.A. 33, 36. Despite Jack's disavowal at trial of these admissions, the jury was entitled to credit the admissions in the statement rather than the denials at trial. Moreover, if the jury concluded that Jack was aware of the high probability that he was carrying drugs but deliberately avoided learning the truth of the matter, such a finding was sufficient to establish that he acted knowingly. United States v. Jewell, 532 F.2d 697 (9th Cir.) (en banc ), cert. denied, 426 U.S. 951 (1976).
 
 
 20
 Finally, there was ample evidence that Jack possessed the cocaine base with the intent to distribute it. Distribution within the meaning of 21 U.S.C. Sec. 841 includes the transfer of drugs from one person to another and Jack admitted both at trial and in the pretrial statement that he gave to the police that he came to Washington for the sole purpose of delivering the tote bag and its contents to two women. The jury was also entitled to infer intent to distribute from the large quantity of cocaine base in the bag at the time of his arrest. United States v. Castellanos, 731 F.2d 979, 985 (D.C.Cir.1984).
 
 3. The Deliberate Ignorance Instruction
 
 21
 The district court's deliberate ignorance instruction was properly given. See R.A. 2: 76-77 for a transcription of the instruction. A deliberate ignorance instruction is appropriate where the evidence shows that a defendant was aware of a high probability of the existence of the fact in question and that he held no actual belief that the fact did not exist but rather, that he deliberately failed to investigate the matter in order to remain ignorant of the truth. Jewell, 532 F.2d at 698-704 & n. 21.
 
 
 22
 At trial Jack testified that at the invitation of a virtual stranger offering fast money, he travelled to Washington at his own expense to deliver a red canvas bag, the contents of which he never saw or inquired about. Transcript ("Tr.") II 15, 17. He was told to deliver this bag to two women whom he did not know who would approach him at the train station, act as if they knew him, take the bag and give him money in return. Tr. II 24, 26. After completing the delivery, he was to fly back to New York immediately. Tr. II 24. Jack further conceded that he was paid approximately $600 to perform this routine not once, but twice. Tr. I 5-8. Moreover, he admitted both that he was aware of the pervasive drug trafficking that took place near the Job Corps where Nutt contacted him and that he suspected the bag he transported might contain "something valuable" on the second trip. Tr. II 26, 28-29. Nonetheless, Jack disclaimed any knowledge that he was being paid to deliver the bag to Washington because it contained illegal drugs. Clearly, given these facts, a deliberate ignorance instruction was appropriate.
 
 
 23
 Further, Jack misinterprets the instruction in asserting that it allowed the jury to convict on a finding of mens rea less than knowledge. Contrary to Jack's assertion, the district court did not instruct the jury that the knowledge element could be satisfied if appellant's lack of knowledge was due to the fact that he was "careless, negligent or even foolish in failing to obtain it." Rather, what the court said was that "If the defendant lacked this knowledge, you must find him not guilty, even if the government proves that the only reason the defendant lacks such knowledge was because he was careless, negligent or even foolish." R.A. 2: 77 (emphasis added). Thus, the very passage about which Jack complains made clear that nothing short of deliberate avoidance of knowledge would suffice as proof of this element of the offense.B. Jack's Sentence
 
 1. Supervised Release
 
 24
 Jack appears to argue that the district court could not properly impose a term of what he characterizes as "probation" to be served after his term of 120 months imprisonment because of the uncertainty of punishment in the event a condition of probation is violated. (In fact, Jack was sentenced to five years supervised release, not probation.) Jack is wrong.
 
 
 25
 The standards for the imposition and revocation of supervised release terms are delineated in 18 U.S.C. Sec. 3583. Section 3583(e) expressly defines the punishment which may be imposed in the event that a defendant violates a condition of the release period.[3]
 
 
 26
 Moreover, the provision for supervised release was inserted by Congress in 1986 as an amendment to 21 U.S.C. Sec. 841(b) and replaced the previously existing "special parole" term which, like supervised release, was imposed to follow a mandatory term of imprisonment. Anti-Drug Abuse Act, 21 U.S.C. Sec. 841 (Supp.IV 1986). And while to our knowledge, the supervised release provision of Sec. 841(b) has not been subject to legal attack, the analogous special parole provision of former 21 U.S.C. Sec. 841(c) has withstood repeated constitutional challenges on the same grounds Jack asserts here--that it violated due process because it failed to specify the maximum additional punishment which could be imposed in the event the conditions of special parole were violated. See, e.g., United States v. Arellanes, 767 F.2d 1353, 1358-59 (9th Cir.1985); United States v. Carcaise, 763 F.2d 1328, 1334 (11th Cir.1985). Accord United States v. Butler, 763 F.2d 11, 15-16 (1st Cir.1985); Yates v. United States, 753 F.2d 70, 71 (8th Cir.), cert. denied, 471 U.S. 1022 (1985); United States v. Hernandez, 750 F.2d 1256, 1260 (5th Cir.1985).
 
 2. The Eighth Amendment
 
 27
 Jack's argument that the sentence imposed upon him pursuant to 21 U.S.C. Sec. 841(b) violates the Eighth Amendment's proscription of cruel and unusual punishment is frivolous.
 
 
 28
 We rejected this claim in Brown, supra, where we explained that in reviewing Eighth Amendment claims, appellate courts should grant substantial deference to the broad authority of the legislature to determine appropriate punishment for crimes. Brown, 859 F.2d at 977. Regarding the punishment scheme created by Sec. 841(b), the court concluded, "Congress determined that the distribution of certain dangerous narcotics, such as cocaine base, constituted a national menace and therefore created a comprehensive scheme of graduated penalties proportionate to the nature and severity of the offense in question." Id. at 977. Thus, we held that the mandatory penalties provided under Sec. 841 do not constitute cruel and unusual punishment. Id. In this instance, as well as in the claim relating to the statutory definition of "cocaine base," defense counsel was obliged to, but did not, bring to our attention controlling precedent. In so acting, he benefits neither his client nor the appeals process. We trust his omission will not be repeated.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 The following facts are recounted from both a pretrial statement Jack gave to the police and from the trial transcript
 
 
 [2]
 By so asserting, Jack attacks both the charging and sentencing provisions of the statute
 
 
 [3]
 For example Sec. 3583(e)(3) provides in part that a prisoner sentenced to a post-prison term of supervised release may be required "to serve in prison all or part of the term of supervised release without credit for the time previously served on post-release supervision...."