**UNITED STATES of America, Appellee,**

**v.**

**Anthony BROWN, Appellant.**

**No. 89–3216**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1990.

Decided Dec. 28, 1990.

Rehearing and Rehearing En Banc Denied Feb. 14, 1991.

Mary E. Davis, Washington, D.C., (appointed by this Court), for appellant.

Denise M. Abrahams, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black and Patricia Stewart, Asst. U.S. Attys., Dept. of Justice, were on the brief, for appellee.

Before WALD, Chief Judge, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Anthony Brown challenges his conviction on charges of possession with intent to distribute a substance containing phencyclidine ("PCP") in violation of 21 U.S.C. § 841. He argues, first, that the trial court erred in admitting into evidence a police officer's testimony, on re-direct examination, that he had been told that Brown and an informant had had "previous dealings of PCP." We find that the testimony was inadmissible hearsay and that, although defense counsel did, on cross-examination, initiate a line of questioning concerning the informant's identification of Brown, he did not "open the door" to the officer's later hearsay testimony. However, because the government did not exploit this erroneously-admitted testimony and because the remainder of the government's evidence was very substantial, we find that the trial court's error was harmless.

Brown also challenges the trial court's enhancement of his sentence under the repeat offender provision set forth in 21 U.S.C. § 841(b)(1)(B). He argues that the government and the trial court failed to comply with the filing requirements established by statute. We disagree and find that the trial judge's acceptance of the enhancement papers in open court was sufficient to satisfy the statutory filing requirements. Accordingly, we affirm Brown's conviction and sentence.

## I. BACKGROUND

In mid–1989, Samantha and Richard Anderson were arrested by the D.C. Metro-

politan Police Department on charges of cocaine possession. These charges were "no-papered" and the Andersons began cooperating with the Department in its investigation of the PCP trade. They introduced police officers to PCP dealers, arranged and made "controlled purchases" of drugs, and, in some instances, testified in criminal prosecutions.

In one such controlled purchase, the Andersons arranged to purchase six bottles of PCP for $1,600. Pursuant to the agreement, the Andersons went to a local hospital and called the seller's telephone pager.[1] The seller called back, directing the Andersons to proceed to a local restaurant and to call the pager again. The Andersons informed the police, who then placed the restaurant under surveillance. At the restaurant, Mr. Anderson called the pager; the seller called back and said that he would be there shortly and would be wearing a red, white, and blue shirt. Fifteen minutes later, police officers observed Brown get out of a car, lean over a wall in the parking lot of the restaurant, and enter the restaurant for a brief period. Brown was then observed talking to Mrs. Anderson, who was alone in the car while her husband made another phone call. Mrs. Anderson testified that Brown said he was going to get the "water"—a slang term for PCP. As Brown walked away, Mrs. Anderson signalled police officers, who then arrested Brown. Brown was wearing a red, white, and black jacket and on his person, police found a beeper which displayed the telephone numbers of the two phones from which the Andersons had arranged the purchase.

After a brief search, police found, near the wall in the parking lot, a beige plastic bag containing six bottles of PCP. The police also arrested three persons in the car in which Brown had arrived and found, in the car's trunk, an identical beige plastic bag.

At trial, defense counsel and D.C. Police Sergeant Wilson (who was present at the arrest) engaged in the following exchange:

Q. Did you debrief the Andersons after Mr. Brown was arrested?

A. Yes.

Q. And at that time when you debriefed them after Mr. Brown was arrested, did either of them state they had seen Mr. Brown before?

A. Yes.

Q. And which Anderson said he had seen Mr. Brown before, or she had seen?

A. Mrs. Anderson.

. . . .

Q. [I]s there a reference in any of your police reports or in any of your notes with reference to the fact that Mrs. Anderson told you she had seen Mr. Brown before?

A. I don't know. None of my personal notes.

Q. And is there any reference during your testimony before the grand jury in this courthouse that Mrs. Anderson had seen Mr. Brown before?

A. I don't remember that.

On re-direct examination of Sergeant Wilson, the prosecutor extended this line of questioning:

Q. Now, counsel asked you whether either Mr. Anderson or Mrs. Anderson could identify [Brown] and you responded you learned Mrs. Anderson could identify him. Do you know how she could identify him? Did you learn that?

Defense Counsel: Objection, unless it is personal knowledge, Your Honor.

Q. Well, he opened it up, Your Honor.

The Court: All right. Do you know? If you don't know, then

. . . .

A. I was told it was from previous dealings of PCP.

A jury subsequently convicted Brown of possession of PCP with intent to distribute. On appeal, Brown contends that the trial

---

**1.** Telephone pagers or beepers, which apparently are widely-used in illegal drug transactions, record and store telephone numbers entered by callers.

court erred in admitting Sergeant Wilson's testimony.

## II. ADMISSIBILITY OF WILSON'S STATEMENT

Brown argues that Wilson's statement on re-direct was inadmissible hearsay. We agree and reject the government's contention that defense counsel, in his cross-examination, "opened the door" to Wilson's testimony.

■ Wilson's statement—that he had been told that Mrs. Anderson and Brown had met during earlier dealings of PCP— was classic hearsay,[2] an out-of-court statement offered in evidence to prove the truth of the matter asserted.[3] *See* Fed.R.Evid. 801(c). Although the government suggests that the statement was offered to rehabilitate Wilson's testimony after defense counsel challenged Wilson's credibility, we do not agree. How testimony that Anderson and Brown met during prior drug dealings could have enhanced Wilson's *credibility* is not at all clear. If anything, the fact that Wilson failed to write down such a significant fact arguably weakened his credibility. Thus, we find that Wilson's statement on cross-examination was hearsay.

■ Wilson's testimony may nonetheless have been admissible if, as the government contends, the defendant "opened the door" to the hearsay. Under the "curative admissibility" doctrine, the introduction of inadmissible or irrelevant evidence by one party justifies or "opens the door to" admission of otherwise inadmissible evidence. *See* Cleary, *McCormick on Evidence* § 57 (3d ed. 1984); *see also United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir.1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989); *United States v. Childs*, 598 F.2d 169, 174 (D.C.Cir.1979). In this case, how-

ever, the curative admissibility doctrine did not render the hearsay testimony admissible, for two reasons. First, defense counsel did not "open the door" by introducing inadmissible or irrelevant evidence. Wilson's statement that Anderson and Brown had met previously was elicited by the defense at cross-examination, but was not inadmissible because it fit squarely within the prior-identification exception to the ban on hearsay. *See* Fed.R.Evid. 801(d)(1)(C). Accordingly, the precondition for curative admissibility had not been met; because the door had not been opened, Wilson's hearsay testimony could not be admitted.

■ Even if defense counsel had opened the door by questioning Wilson about his notes and challenging his credibility, it does not follow that *all* subsequent evidence is admissible. As this court has long recognized: " 'Opening the door is one thing. But what comes through the door is another.' " *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir.1971). "Introduction of otherwise inadmissible evidence under shield of [curative admissibility] is permitted 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.' " *Id.* (citation omitted); *cf. Whitworth*, 856 F.2d at 1285; *Childs*, 598 F.2d at 174. In this case, all that was at issue was Wilson's *credibility*. Thus, even if the defense did open the door, it only did so to the extent of admitting evidence that rehabilitated that credibility. As noted above, Wilson's hearsay testimony concerning Brown's prior activities was certainly not relevant to Wilson's credibility.

■ "Curative admissibility" is a shield, not a sword. Although the government may prevent a defendant from using rules

---

**2.** As indicated in the transcript excerpt, defense counsel promptly objected to Wilson's statement as hearsay; accordingly, we look directly at whether the trial court erred in admitting Wilson's statement into evidence.

**3.** The Fifth Circuit reached a similar conclusion in a like situation in *United States v. Hernandez*, 750 F.2d 1256, 1257 (1985). In that case, a DEA agent testified as follows:

Q. ... [W]hat first brought the attention of the [DEA to] Hernandez?
A. We received a referral by the U.S. Customs as Hernandez being a drug smuggler.
Reviewing Hernandez's conviction, the court found that the agent's response was hearsay, rejecting as contrary to "common sense" the government's claim that the statement was simply offered to show the "motivation behind DEA's investigation." *Id.*

of evidence to select and enter pieces of evidence wholly out of context, the government may not shore up a prosecution by pushing through the open door evidence not "necessary to remove any unfair prejudice" created by defense counsel's tactics. In sum, the range of otherwise-inadmissible evidence that may be squeezed through an "open door" is limited. In this case, the government exceeded those limits and Wilson's statement was therefore inadmissible hearsay.[4]

### III. HARMLESS ERROR ANALYSIS

■ Despite the trial court's error in admitting Wilson's hearsay testimony, we need not upset Brown's conviction if we find that the court's error was harmless. *See* Fed.R.Crim.P. 52(a). Because of the very substantial evidence indicating Brown's guilt and because the government made no further use of the hearsay testimony, we find that the trial court's error was harmless.

The government's evidence against Brown was considerable and coherent. Brown's clothing resembled the clothing that the PCP seller told the Andersons he would be wearing. A bag containing the pre-arranged number of bottles of PCP was found close to where Brown was standing. An identical bag was found in the car in which Brown arrived. Perhaps most significantly, the telephone pager recovered from Brown displayed the telephone numbers of the phones over which the deal had been arranged. Indeed, after the arrest, the confiscated pager received a call. Police returned the call, set up a PCP "sale" and arrested the buyer. Based on

this evidence we cannot say that this was a "close" case, *United States v. Hernandez,* 780 F.2d 113, 119 (D.C.Cir.1986); Wilson's hearsay testimony was but a small part of the prosecution's overall scheme of inculpatory evidence. Moreover, the government did not exploit the erroneously-admitted hearsay testimony. Throughout both its case-in-chief and its summation, the prosecution did not invoke the evidence of Brown's prior acts. *Cf. United States v. Hernandez,* 750 F.2d 1256 (5th Cir.1985) (reversing conviction in part because prosecutor's closing argument emphasized inadmissible evidence). For these reasons, we find that the trial court's admission of Wilson's statement did not constitute reversible error. Accordingly, we affirm Brown's conviction.

### IV. SENTENCE ENHANCEMENT

Brown also contends that the district court erred in enhancing his sentence; in particular, he maintains that the government failed to comply with the filing requirements of 21 U.S.C. § 851(a)(1).[5] That section provides that the government must "*before trial* ... file[ ] an information with the court ... stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1) (emphasis supplied). In this case, the government orally notified defense counsel of its intentions under § 851 on August 29, 1989—the day trial was originally scheduled to begin. The trial was pushed back two days and when, on the day of the trial, the judge accepted the § 851 papers in court, the defense objected on the grounds of untimeliness. After the *voir dire* began, the defense again

---

**4.** Brown also contends that Wilson's statement constituted prejudicial evidence of prior bad acts and that the trial court erred in admitting that statement. *See* Fed.R.Evid. 403, 404. However, defense counsel failed to object on these grounds at trial; accordingly, any review of this issue would apply a "plain error" standard. *See* Fed.R.Evid. 103(d). Because we find that the trial court's error in admitting Wilson's inadmissible hearsay was harmless, *see* Part III *infra,* we need not decide Brown's Rule 403–404 contentions. Any violation of those Rules in this case would certainly not rise to the level of plain error.

**5.** Brown also contends that the government failed to comply with 21 U.S.C. § 851(b), which requires that, before sentencing, the court "inquire of the [defendant] ... whether he affirms or denies that he has been previously convicted" and "inform him that any [new] challenge to a prior conviction ... may not thereafter be raised to attack the sentence." Upon review of the record, we find that the trial court substantially complied with these requirements and offered Brown ample opportunity to deny the previous conviction relied upon by the government.

challenged the § 851 filing. The judge responded, "The [papers] were filed in open court. No problem with that. He has notice."

The defense claims that the filing of the § 851 papers—and thus the sentence enhancement—were infirm. Although it is true that the papers were not filed with the clerk before the day of trial, under the rules of civil procedure (which Federal Rule of Criminal Procedure 49(d) incorporates by reference), a filing "shall be made by filing ... with the clerk ..., except that *the judge may permit the papers to be filed with the judge,* in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk." Fed.R.Civ.P. 5(e) (emphasis supplied). Thus, in this case, the defendant's only claim is that the trial judge, in accepting the § 851 papers, failed to comport with this Rule.

 The defendant's claim is twofold. First, he contends that the judge did not "permit" papers to be filed with him; second, he contends that the judge did not follow the Rule's procedures. We disagree, for we find the defendant's reading of Rule 5(e) overly formal and unduly constrictive of a trial judge's authority and discretion in the management of a criminal proceeding. Contrary to the defendant's contention, the judge, in "permit[ting]" a filing, need not utter particular words or offer particular reasons; all that is required is that the judge knowingly accept the filing. Similarly, we do not read the

Rule so narrowly as to require a judge to interrupt proceedings in order to deliver the papers to the clerk. In this case, there is no evidence that the judge failed to note the filing date and forward the papers to the Clerk's office; indeed, as the record indicates, the clerk's office marked the filing at issue as received on the day of trial—August 31, 1989. Perhaps most significantly, the judge ensured that the purposes of the filing requirements were fulfilled, taking care to note that the defense had had advance notice of the filing and to give the defense ample opportunity to seek a continuance or brief recess to reconsider its trial strategy. Under these circumstances, we find that the judge, in accepting the § 851 papers in open court, substantially complied with the filing requirements of Rule 5(e).[6] In sum, although the trial court may not have precisely complied with the technical requirements of the Rule, we find that the judge's acceptance of the filing, combined with the adequate notice granted defense counsel, met the requirements of both the Rule and the statute.

For these reasons, we affirm appellant's conviction and sentencing.

*So ordered.*

---

6. Because we find the in-court filing satisfactory, we need not reach the question urged upon us by Brown—namely, when does a trial begin for purposes of § 851? *Cf. United States v. Jordan,* 810 F.2d 262, 269 (D.C.Cir.), *cert. denied,* 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987) (discussing this issue).