UNITED STATES of America, Plaintiff-Appellee,

v.

George ESCAMILLA, Defendant-Appellant.

No. 80–2269.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1982.

Alan Brown, San Antonio, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARZA and RANDALL, Circuit Judges *.

GARZA, Circuit Judge:

Appellant, George Escamilla, was convicted on one count of conspiring to possess and sell heroin in violation of 21 U.S.C. § 846 and three counts of aiding and abetting in the sale of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Evidence at trial revealed that DEA agent Art Rodriguez, under cover as "David Ramirez," arranged to purchase varying amounts of heroin on three different occasions from appellant's mother-in-law, Olga Elizondo. Escamilla was allegedly the supplier of the heroin to his mother-in-law.

The first transaction took place on July 2, 1980. It began when agent Rodriguez phoned Elizondo who informed him that her source had just left her house, and she could make the sale at 2 p. m. that day. At approximately the same time the phone call was made, appellant Escamilla was observed leaving Elizondo's home. At 2 p. m., Elizondo drove to the home of Escamilla's parents at 611 North San Bernardo Street in San Antonio, Texas. She remained there a short time and subsequently left to effectuate the first sale. After delivering the heroin to the DEA agent, Elizondo returned to the parents' house where she picked up appellant and returned to her own home.

On July 8, DEA agent Rodriguez again sought to purchase some heroin from Elizondo. While arrangements for the sale were being made, the appellant, Escamilla, phoned an informant to inquire if "David" [Ramirez, the DEA agent] could be trusted or not; also during this time, Elizondo revealed to the DEA agent that her source was "related" to her. Arrangements for the second sale were made and Elizondo was observed driving to appellant's parents' home where Escamilla emerged, went briefly to Elizondo's car and then left. Elizondo then proceeded to make the sale to the DEA agent.

On July 9, a third sale was arranged. On that day, Escamilla was observed leaving Elizondo's house, driving to his parents' home, where he briefly entered the car of Elizondo's son and was observed leaning forward as if to remove something from the floorboard. Shortly thereafter, he left the car and went inside his parents' home. That night, the DEA agent purchased heroin from Elizondo which she had kept stored beneath the seat of her car. At the conclusion of the sale, Elizondo was arrested.

After her arrest, police placed a call to appellant Escamilla stating that Elizondo had been in an accident and the "stuff" had been recovered. As he was leaving his apartment following the call, Escamilla was arrested and taken to the police station. Upon his arrival, he saw Elizondo who stated to him in Spanish, "Don't worry. I told them I got the stuff in Mexico."

Elizondo and Escamilla were jointly tried in the U.S. District Court for the Western District of Texas. During cross-examination of the government's primary witness, agent Rodriguez, the following exchange took place:

Question: Did you know that George's family lives at 611 North San Bernardo [parents' home], whatever the street is?
Answer: Yes sir, I do.
Question: Do you know it is his mother's and father's home or did you just know it was family?

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision.

The case is being decided by a quorum. 28 U.S.C. § 46(d).

Answer: I know we arrested one of George's brothers delivering heroin at that house. I know that the family lives there.

Because of the unresponsiveness and the potential prejudice of the witness' answer, appellant moved for a mistrial which the judge took under advisement overnight. Following arguments the next morning, the district judge denied the motion and instructed the jury as follows:

You ladies and gentlemen are instructed that you shall disregard that statement and that answer for any purpose in the trial of this case or in your deliberations, nor may you draw any inferences of any kind from that statement.

Now, ladies and gentlemen, bearing in mind, are there any of you on this jury here and now who cannot follow that instruction? Are there any of you who cannot put this statement out of your mind for all purposes? If so, raise your hand.

No juror responded. Following his conviction, Escamilla moved for a new trial again alleging that the statement of agent Rodriguez had prejudiced the jury. At the hearing on the motion, appellant presented evidence establishing that the statement of agent Rodriguez was not entirely correct. Indeed, Escamilla's brother had never been arrested at the San Bernardo address, nor had a sale of heroin ever been observed there. The district judge, after a thorough review of the facts and law, denied appellant's motion. From his conviction, Escamilla appeals. We find that the district court erred when it refused to grant either Escamilla's motion for mistrial or for a new trial, and accordingly, we reverse appellant's conviction and remand this case to the district court for a new trial.

■ The issue presented for our review in this case is whether the trial court erred in determining that the unresponsive answer of agent Rodriguez implicating appel-

lant's brother was not so prejudicial as to warrant a mistrial.[1] As the district judge recognized, striking erroneously admitted evidence and admonishing the jury to disregard it normally serves to cure the error. *United States v. Rojas*, 537 F.2d 216, 222 (5th Cir. 1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *United States v. Troise*, 483 F.2d 615, 618 (5th Cir.), *cert. denied*, 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973). However, where evidence is so prejudicial that the jury will unlikely be able to erase it from their minds, then a mistrial should be ordered. *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir. 1977); *United States v. DeDominicus*, 332 F.2d 207, 210 (2d Cir. 1964). As we have previously stated,

To require a new trial, the prejudicial effect of improper matter, viewed in the context of that particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the ... statement had a substantial impact upon the verdict of the jury.

*United States v. Rojas, supra; United States v. Rodriguez*, 524 F.2d 485, 487 (5th Cir. 1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1474, 47 L.Ed.2d 741 (1976); *United States v. Arenas-Granada*, 487 F.2d 858, 859 (5th Cir. 1973). The determination of the impact which a prejudicial statement has upon a jury must be made on a case by case basis.

■ In the instant case, we find that there is a "significant possibility" that the unresponsive, inaccurate statement of government agent Rodriguez had a substantial impact upon the verdict of the jury. Here was a case where the government attempted to prove that the home of Escamilla's parents was the drop-off point for the exchange of heroin between Escamilla and Elizondo. There was no direct evidence, however, establishing that any her-

---

1. Appellant's motion for mistrial and his motion for a new trial were based upon the same claim, that being the prejudicial impact of agent Rodriguez' unresponsive statement. For

purposes of discussion, we have combined appellant's allegation of error with respect to each motion and considered them as one claim.

oin had actually been exchanged at the premises. The statement of agent Rodriguez was precisely the testimony needed to show that the parents' home had been used as an exchange point by Escamilla's brother, and through inference, by the appellant himself. It was clearly a key element in linking Escamilla to the sale and exchange of the heroin. The prejudicial impact of the statement is apparent, and such is compounded by the fact that the statement was false. Agent Rodriguez admitted at the hearing on appellant's motion for new trial that no sale or exchange of heroin had ever been observed taking place at the San Bernardo address, nor had Escamilla's brother ever been arrested there in connection with the sale of heroin. Thus, through the use of inaccurate, unresponsive and irrelevant testimony, the government attempted to convict the defendant by association.

A court's assessment of the impact of a prejudicial statement is tempered by the substantiality of evidence of the defendant's guilt. We have previously recognized that other significant evidence of guilt reduces the likelihood that improper testimony had a substantial impact upon the verdict of the jury. *See United States v. Rojas, supra; United States v. Bryant,* 490 F.2d 1372, 1378–79 (5th Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1974); *United States v. Roland,* 449 F.2d 1281, 1282 (5th Cir. 1971). Conversely, the absence of overwhelming evidence decreases the likelihood that a jury would be able to disregard a prejudicial statement in considering the evidence and reaching a verdict. In this case, the evidence of Escamilla's guilt was circumstantial, and it clearly was not overwhelming. At no time was Escamilla found in possession of the heroin or the proceeds from the sale of heroin. His primary involvement in the crime was revealed through testimony of surveillance officers as to his movements at Elizondo's home and the San Bernardo address.[2] Absent more convincing evidence, however, we

believe that there is a significant possibility that the statement of agent Rodriguez had a substantial impact on the verdict of the jury. Accordingly, we hold that appellant Escamilla is entitled to a new trial.

REVERSED.

---

**2.** We also note that other evidence, such as appellant's phone call to the informant inquiring about agent Rodriguez and the exchange between Escamilla and Elizondo at the police station, tended to suggest that appellant may have participated in the crime.