466 So.2d 906 (1985)
Marshaun D. STEWART
v.
STATE of Mississippi.
No. 55508.
Supreme Court of Mississippi.
March 27, 1985.
*907 Cheryl Ann Webster, Clarkdale, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
This is an appeal from a criminal conviction in the Circuit Court of Coahoma County, Elzy J. Smith presiding, in which Marshaun D. Stewart was found guilty of rape and sentenced to serve 25 years at the Mississippi Department of Corrections. Stewart appeals assigning as error:
(1) The trial court erred in refusing a peremptory instruction in favor of the appellant because the evidence presented was insufficient to support a rape conviction;
(2) The jury's verdict was against the overwhelming weight of the evidence;
(3) The trial court erred in denying appellant's motion for mistrial because evidence was introduced concerning other crimes alleged to have been committed by the appellant.
Appellant is presently incarcerated in the Mississippi State Penitentiary.

I.
Around 2:44 a.m. on April 29, 1983, Officer Bill Gardner of the Clarksdale Police Department, received a call reporting a rape at 518 Florida Street in Clarksdale. When Officer Gardner arrived at the scene, L.M.Y.[1] told him that she had been raped. According to Officer Gardner, L.M.Y. was "very shaky", upset and crying. Officer Gardner noticed that the victim walked with a very bad limp.
Upon investigation, Officer Gardner discovered that the window to the back bedroom which contained an air conditioning unit was unlocked. An overturned garbage can was under the window on the outside of the house. Inside of the house, the curtains were disarranged and there was a footprint on the bed underneath the window. A television had been knocked over. No clear fingerprints were obtained from either the back bedroom window or the television set.
At trial L.M.Y., a 44 year old employee of Coahoma Junior College for 18 years, testified that she was a victim of polio at the age of four months. On the evening of the incident she was in bed alone watching TV and drifted off to sleep. She awoke *908 sometime later and, on her way to the bathroom, noticed that the door to the extra bedroom was open. L.M.Y. said a man standing in the door stepped forward saying "I'm not going to hurt you" and grabbed both her arms. She pushed the man away and sat in a rocking chair at the foot of her bed. The man came over to the rocking chair, knocking over the television in the process, picked her up and carried her over to the side of the bed. After making the victim remove her nightgown, the man pushed her back on the bed, performed oral sex on her and then had sexual intercourse with her. Throughout the act, the assailant kept telling L.M.Y. to stop shaking. When L.M.Y. began praying, the attacker told her to stop. At one point, the victim attempted to talk loudly in order to wake her neighbor, but the assailant told her to "shut up". L.M.Y. testified that her attacker did not display a weapon.
Dr. Glenn L. Wegener, specialist in obstetrics and gynecology at the Women's Clinic in Clarksdale, examined the victim around 5:00 o'clock a.m. and described her condition as upset and disturbed. The examination revealed no bruises, lacerations or other evidence of physical injury, but a vaginal smear revealed the presence of sperm.
While investigating another incident, Officer Gary Crocker of the Clarksdale Police Department, testified that on June 13, 1983, after advising appellant Stewart of his rights, Stewart gave a statement in which he admitted entering L.M.Y.'s house by climbing over the air conditioner in the back window. In this statement, Stewart denied forcing L.M.Y. into oral sex along with raping her. Officer Crocker testified that the victim positively identified the appellant from a photo spread.
The defense offered by the appellant was alibi. Three witnesses testified that the appellant was in Dixmoor, Illinois from April 26, 1983, until May 3, 1983, and on May 3, the three persons and the appellant drove from Dixmoor to Clarksdale. Upon arriving in Clarksdale, they drove to a school where appellant's mother was employed to obtain the key to his parents' home.
Appellant's mother, Veronica Johnson, testified that her son left Clarksdale in March of 1983 and that she next saw her son on May 3, 1983 at the school where she worked as secretary to principal Jimmy Pittman. Jimmy Pittman testified that he had known the appellant for approximately six years and remembered appellant coming to the school on May 3, 1983 in order to get a house key from his mother.
One alibi witness testified that on May 2, 1983 he accompanied appellant and two others by automobile from Dixmoor, Illinois to Clarksdale, Mississippi. A service station receipt in the amount of $4.80 was introduced to document the purchase by the witness of oil for his automobile while in Illinois. The invoice number on the receipt was 784812.
In rebuttal, the state introduced credit card invoices from a service station in Clarksdale bearing invoice Numbers 784811, 784810 and 784809. Fred Johnson, the attendant at the Clarksdale service station testified in rebuttal that, approximately two weeks before trial, he issued a receipt for $4.80 to the alibi witness, who claimed he needed the receipt to settle a dispute with his father.

II.
Whether the evidence was insufficient to support a rape conviction?
At the conclusion of all of the evidence, the defense moved for a peremptory instruction. The trial court denied the motion, and appellant assigns this ruling as error arguing that the evidence was insufficient to support a rape conviction because the state failed to introduce any evidence of force. Appellant apparently relies upon the testimony of the victim to the effect that her assailant never displayed a weapon and assured her that he would not harm her. Additionally, the testimony of the examining physician was that no bruises or lacerations were found on L.M.Y.'s body.
*909 The evidence, however, was uncontradicted that L.M.Y. was a victim of polio and walked with a considerable limp. The doctor testified that her physical ability to withstand abuse would be less than the average individual. L.M.Y. herself testified that, while she had never tested her strength, she did not believe she could fight a man.
The well-settled rule is that in a prosecution for rape, physical force on the part of the assailant or physical resistance on the part of the victim is not necessary if the proof shows beyond a reasonable doubt that the victim surrendered because of fear arising out of a reasonable apprehension of great bodily harm. Clemons v. State, 460 So.2d 835 (Miss. 1984); Davis v. State, 406 So.2d 795 (Miss. 1981); Fields v. State, 293 So.2d 430 (Miss. 1974). Accepting as true all of the evidence favorable to the state including reasonable inferences that may be drawn therefrom, and disregarding evidence favorable to the defendant, the evidence presented was sufficient to convince a rational factfinder of the defendant's guilt beyond a reasonable doubt. Gray v. State, 427 So.2d 1363, 1368 (Miss. 1983). Accordingly, the denial of the requested peremptory instruction was not error.

III.
Whether the verdict was against the overwhelming weight of the evidence?
Appellant next argues that the verdict should be set aside as manifestly against the weight of credible evidence. Again, the argument is that the element of force was not proven.
Once a jury has returned a verdict of guilty in a criminal case, this Court is not at liberty to direct that the defendant be discharged short of a conclusion that the evidence, taken in a light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Pearson v. State, 428 So.2d 1361 (Miss. 1983).
Significantly, the defense offered by the appellant in the case sub judice was not consent on the part of the victim but rather alibi. This alibi defense was discredited by the statement given by the appellant to authorities after his arrest in which appellant admitted entering the victim's home on the night of the incident. The defense was further discredited by credit card invoices and the testimony of Fred Johnson. This evidence clearly established that a service station receipt offered by the defense to prove the presence of the appellant and others in the Chicago area on May 2, 1983 was in fact obtained from a service station in Clarksdale shortly before trial.
Applying the standard of Pearson v. State, this Court cannot conclude that the trial court erred in refusing to direct a verdict for the appellant.

IV.
Whether the trial court erred in overruling appellant's motion for a mistrial?
Prior to trial, appellant moved by motion in limine to exclude any reference or testimony to any other crimes by the appellant. The court ruled that reference to any other crimes would be limited to those for which appellant had been convicted and would not otherwise be permitted unless later shown to be admissible. The court cautioned counsel for both parties to advise all witnesses of the effect of its ruling and reminded counsel of the ruling prior to opening statement.
During the direct examination of state witness Officer Gary Crocker, the following occurred.
A. Um, I was investigating another complaint is the reason I first came across him [the defendant]. I went to his house to check out the complaint and informed him, his mother, his father, why I was wanting to talk to him. I wanted to talk to him at the police station. I informed them all that he was not under arrest; asked him to come with me to the police station... .
I talked to him about the subject that I picked him up there on and at the end of the interview he was  even though he *910 wasn't under arrest I did inform him of his rights. I read him the rights sheet. He signed these saying he understood what his rights were and I asked if I could get a Polaroid picture of him and explained why in reference to a rape case that I was working on and in turn he consented to this... .
In chambers Officer Crocker stated that his reference to "another complaint" involved an incident in which the appellant allegedly chased a man with a pistol. Crocker further stated that his reference to "a rape case I was working on" was a reference to the rape case at bar. Counsel for the appellant moved for a mistrial based upon the remarks, which motion was overruled by the court.
Appellant argues that he was entitled to a mistrial under United States v. Escamilla, 666 F.2d 126 (5th Cir.1982). In Escamilla, the defendant was tried for conspiracy to possess and sell heroin. During cross-examination of the Government's primary witness, defense counsel asked the witness if he knew that the defendant's family lived at a certain address. The witness replied, "I know we arrested one of George's brothers delivering heroin at that house." The trial judge denied the defendant's motion for a mistrial and on appeal, the ruling was reversed by the Fifth Circuit. The test applied by the Fifth Circuit in Escamilla is whether there is a "significant possibility" that the statement had a "substantial impact upon the verdict of the jury." 666 F.2d at 128. The court concluded that the test was met inasmuch as the unsolicited statement provided a clear link between the defendant and the sale and exchange of heroin.
In applying the Escamilla test to the case sub judice, it appears highly unlikely that there is a significant possibility that the reference by Crocker to "another complaint" had a substantial impact upon the verdict of the jury.
It should be noted that defense counsel did not request that the jury be instructed to disregard the remarks which it now assigns as grounds for mistrial. Additionally, when the state volunteered to ask questions clarifying the witness's reference to "a rape case", defense counsel declined the invitation stating, "I don't want to affect my grounds on a mistrial".
Under the circumstances of this case, this Court concludes that this assignment of error is without merit.
The conviction and judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The initials of the victim are used here to protect her identity.