728 So.2d 584 (1998)
Rico SCOTT a/k/a Rico Allion Scott, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00210 COA.
Court of Appeals of Mississippi.
December 30, 1998.
Kelly Collins, Yazoo, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, for Appellee.
*585 Before BRIDGES, C.J., and PAYNE and SOUTHWICK, JJ.
BRIDGES, C.J., for the Court:
¶ 1. Rico Scott, a/k/a Rico Allion Scott, was convicted of forcible rape in the Circuit Court of Yazoo County and was sentenced to serve ten years in the custody of the Mississippi Department of Corrections. Aggrieved, Scott appeals to this Court asserting the judgment is against the overwhelming weight of the evidence, and the evidence is insufficient to support the jury verdict. Finding no merit in the issues raised, we affirm.

FACTS
¶ 2. According to the victim's testimony, P.P. arrived home alone around 11:00 p.m. on May 25, 1996, after having been to a club with her sister. P.P. opened her bedroom window about halfway, twisting the blinds slightly to allow a breeze into her bedroom. The window had no screen. Tired from working all day, she immediately fell asleep.
¶ 3. At approximately 3:00 a.m. on May 26, 1996, P.P. awakened to find Scott, wearing a T-Shirt and dark pants, standing by her bed. She initially thought him to be her boyfriend, but quickly realized he was not. Startled, P.P. asked, "Who are you? What are you doing in my house?" Identifying himself as Jeff Moorehead and as Rico, Scott stated, "What I want will only take a few minutes. I don't want to hurt you." Planning to run out the front door, P.P. asked Scott to let her lock the front door in case her boyfriend should come home. Scott agreed, but held her tightly around the waist to prevent her running. Scott repeated, "I said I didn't want to hurt you."
¶ 4. Scott forced P.P. to bend over the couch, pulled down her pants, and inserted his penis into her vagina from the rear position. Scared of being hurt or worse, P.P. did not fight or scream for help. After raping P.P., Scott fled out the front door. Still dressed in her bedclothes, P.P. locked up the house and drove to her mother's house located less than five minutes away.
¶ 5. P.P.'s mother testified she was awakened by P.P., who was visibly distraught, crying and shaking. She immediately knew something bad had happened to her daughter. While traveling to the police station to report the incident, P.P.'s mother instructed P.P. to "go back through the alley and see if the guy is still there."
¶ 6. The two women spotted Scott sitting with three women on a porch at a house located behind P.P.'s house. P.P. drove around the block once again before stopping in front of the house. As Scott walked toward the car, P.P. told her mother he was the man who raped her. Through her opened window, P.P. told Scott, "Yeah, you were just in my house." Scott responded, "I didn't do that," and calmly returned to the porch.
¶ 7. After filing a report at the police department, P.P. was sent to King's Daughters Hospital where a victim sexual assault kit was administered. Following her examination at the hospital, P.P. returned to the police station to look at photo line-ups in an attempt to identify the person who raped her. Scott's photograph was not among the pictures.
¶ 8. Eric Snow, the police officer investigating the incident, testified an overturned bucket found underneath the bedroom window and scuff marks on the side of the house indicated the rapist had climbed through the window.
¶ 9. P.P. testified she had noticed Scott a few days before the incident when he was walking by her house. Scott spoke to her as she was going inside. She did not know who he was at the time.
¶ 10. On June 2, P.P. positively identified Scott at a barbershop across the street from her house. When P.P. confronted him, Scott ran out of the shop. P.P. reported to the police she had located her assailant.
¶ 11. Scott appeared at the police station after he heard the police were looking for him. Officer Snow advised Scott of the crime he was accused of committing and took Scott's picture for a photo line-up. Thereafter, Officer Snow called P.P. to look at additional pictures at the police station. P.P. immediately identified Scott as the man who had raped her.
*586 ¶ 12. Officer Snow arrested Scott on June 3. Scott denied being in P.P.'s house and denied having sex with P.P. According to his statement to Officer Snow, Scott was out with friends the evening of May 25, returning to his grandparents' home about 2:15 a.m. on May 26. However, a DNA comparison of Scott's blood to the semen collected from P.P. on May 26 revealed a positive match.
¶ 13. Scott's version of his act of sexual intercourse with P.P. differed significantly from P.P.'s testimony. According to Scott, he considered P.P. a friend. He testified they had arranged on the afternoon of May 25 to get together at her house later that night. When Scott arrived between 2:00 and 3:00 a.m., P.P. unlocked the front door for him, and they had consensual sex in her bedroom as they had done about two weeks earlier. When he heard the police had a warrant for his arrest, Scott went to the police station. Scott explained he denied having sexual intercourse with P.P. because he thought the situation would "blow over".
¶ 14. Scott was indicted, tried, and ultimately convicted of raping P.P. The trial court sentenced Scott to serve ten years in the custody of the Mississippi Department of Corrections. Scott perfected this appeal.

ARGUMENT AND DISCUSSION OF LAW

I. WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN SCOTT'S CONVICTION?
¶ 15. Scott contends the evidence was insufficient to sustain his conviction. The State submits there was sufficient evidence Scott broke into P.P.'s home and raped her, forcibly and against her will.
¶ 16. Since the motion for a directed verdict challenges the legal sufficiency of the evidence, "this Court properly reviews the ruling on the last occasion the challenge was made in the trial court." McClain v. State, 625 So.2d 774, 778 (Miss.1993). In the case at bar, Scott requested a directed verdict after the State had presented its evidence. Therefore, we look only at the evidence presented by the State. A challenge to the sufficiency of the evidence can result in a reversal only where the evidence, with respect to one or more of the elements of the offense charged, is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 17. Scott asserts the evidence is insufficient to support his conviction because P.P.'s testimony was the only testimony that a rape occurred. Our case law clearly holds the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence. "It is well settled in this State that a conviction of rape may be upheld with the uncorroborated testimony of the victim." McKinney v. State, 521 So.2d 898, 899 (Miss.1988). Scott's argument as to P.P.'s testimony being uncorroborated, and therefore insubstantial to support his conviction, is clearly without merit.
¶ 18. In the case at bar, the victim's testimony that she was raped was corroborated by other credible evidence. P.P.'s mother testified that when P.P. arrived at her home within minutes of the rape, she knew something bad had happened because P.P. was upset, crying and shaking. The investigating officer found an overturned bucket and scuff marks on the side of the house under P.P.'s bedroom window indicating the rapist entered the house through the opened window. Furthermore, the DNA analysis conclusively showed Scott was the source of the semen found in P.P.'s vagina. Accordingly, a reasonable juror could conclude Scott raped P.P.
¶ 19. Scott further contends the evidence presented was insufficient to sustain his conviction for forcible rape because there was no testimony or physical evidence indicating force was used.
¶ 20. Scott was convicted under Miss.Code Ann. § 97-3-65(2) (Rev.1994) which provides:
Every person who shall forcibly ravish any person of the age of fourteen (14) years or upward, or who shall have been convicted of having carnal knowledge of any person above the age of fourteen (14) years without such person's consent....
*587 As the Mississippi Supreme Court noted in Hull v. State, 687 So.2d 708, 723 (Miss.1996):
[O]ne of the elements of rape is that it is done "without consent and by force,".... While this is true, this Court stated in Stewart v. State, 466 So.2d 906 (Miss.1985):
The well-settled rule is that in a prosecution for rape, physical force on the part of the assailant or physical resistance on the part of the victim is not necessary if the proof shows beyond a reasonable doubt that the victim surrendered because of fear arising out of a reasonable apprehension of great bodily harm.
¶ 21. Thus, physical resistance on the part of P.P. is unnecessary if she acted out of reasonable apprehension of great bodily harm. P.P. testified she was frightened when she awoke to find Scott standing in her bedroom. Scott implicitly threatened P.P. by stating "I don't want to hurt you" and "I said I didn't want to hurt you." P.P. attempted to flee the house, telling Scott she needed to lock the front door in case her boyfriend came home, but was thwarted by Scott holding her tightly around the waist. Fearing Scott might inflict great bodily harm if she resisted, P.P. reasonably yielded to his demands.
¶ 22. We find the evidence was sufficient to establish and to support the three elements necessary to prove rape, i.e., (a) carnal knowledge, (b) without consent and by force, and (c) of a female age fourteen or upward. Hailey v. State, 537 So.2d 411, 414 (Miss. 1988).

II. WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 23. Scott contends a new trial should have been granted because the verdict of the jury was against the overwhelming weight of the evidence. "A motion for new trial is discretionary with the trial judge and this Court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Johnson v. State, 642 So.2d 924, 928 (Miss.1994) (citations omitted). In reviewing a challenge to the weight of the evidence, this Court must accept as true "the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial." Id.
¶ 24. This case presented a classic jury issue, whether P.P. or Scott was the more credible witness. P.P. testified she did not consent to Scott's having sexual intercourse with her. When arrested on June 3, Scott emphatically denied raping P.P. Only after the DNA analysis conclusively showed Scott was the source of the semen found in P.P.'s vagina did Scott assert he had had consensual sexual intercourse with P.P. on May 26, 1996.
¶ 25. If the jury believed Scott's testimony, then he was guilty of nothing. If the jury believed P.P.'s testimony and the evidence which the State adduced to corroborate her testimony, then Scott was guilty of rape.
¶ 26. The Mississippi Supreme Court explained the jury's function to resolve conflicts in the testimony and evidence in Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979):
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
¶ 27. Moreover, all matters concerning the weight and credibility of the evidence are resolved by the jury. McClain, 625 So.2d at 778. "It is enough to say that the jury, and not the reviewing court, judges the credibility of the witnesses as well as the weight and *588 worth of their [] testimony." Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993).
¶ 28. The jury resolved the issue of Scott's guilt or innocence from the evidence and testimony, which clearly presented a factual dispute for their resolution. This Court is thus compelled to the conclusion that the State's evidence, when viewed in the light most favorable to the State, supports the jury's verdict of Scott's guilt. Therefore, we find that to allow the jury verdict to stand does not "sanction an unconscionable injustice." The trial court did not abuse its discretion in denying Scott's motion for a new trial.
¶ 29. THE JUDGMENT OF THE YAZOO COUNTY CIRCUIT COURT OF CONVICTION OF RAPE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.