751 So.2d 1144 (1999)
Jeffery Wayne KNIGHT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00549-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied November 16, 1999.
*1146 Roy Joseph Farrell, Tupelo, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris, Jr., Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
LEE, J., for the Court:
¶ 1. Jeffery Wayne Knight was charged with Count I sexual battery on his stepdaughter and Count II fondling on his daughter. A three day trial was conducted, and Jeffery Knight was found guilty relative to Count I for sexual battery and not guilty relative to Count II for fondling. It is from the guilty verdict returned by the jury relative to Count I that Jeffery Knight is appealing. Jeffery Knight asserts the following issues for appeal: (1) whether sufficient evidence was presented to convict Knight on the indicted charge, (2) whether the trial court erred in denying Knight's motions for directed verdict, and in denying motions for a new trial, (3) whether the prosecution failed to present a prima facie case and whether the verdict was against the overwhelming weight of the evidence, (4) whether the trial court erred in requiring the jury to continue deliberations, (5) whether Knight's right to confrontation was violated by the entry of the hearsay testimony of Angela Knight, (6) whether the court erred in allowing hearsay testimony from Angela Knight, (7) whether the trial court erred in permitting the testimony of attorney Roger Tubbs and his assistant, (8) whether comments made by the State during closing argument require reversal, and (9) whether the cumulative effect of the aforementioned issues greatly prejudiced Jeffery Knight and rendered his right to a fair trial impossible under the circumstances. Finding the aforementioned issues without merit, we affirm.

FACTS
¶ 2. In August of 1994, A. P., the victim, was living with her two sisters, her mother, Angela Knight, and her stepfather, Jeffery Knight. On August 4, 1994, Jeffery Knight had taken the day off to celebrate his birthday and had chosen to spend the day with the children. Testimony from A.P. and her mother, Angela Knight, revealed that A.P. awoke at approximately 7:00 that morning, but later went to the couch and covered herself with a blanket where she fell back asleep. A.P. was awakened when she heard Jeffery Knight tell her two younger sisters to go outside. A.P. then fell back asleep. A.P. was awakened a second time; however, this time she awoke to find the hand of Jeffery Knight inside her panties and his finger inside her vagina. A.P. kicked Jeffery Knight, and he retreated and went outside. At approximately 5:00 p.m., Angela Knight arrived home from work. Angela Knight noticed that Jeffery Knight appeared nervous and that A.P. and Jeffery Knight were not talking. A.P. informed her mother that she needed to talk with her outside the presence of Jeffery Knight. During this time some friends arrived to help celebrate the birthday of Jeffery Knight.
*1147 ¶ 3. Later, A.P. and her mother met in the bathroom to talk, and A.P. informed her mother of the earlier sexual interaction between Jeffery Knight and herself. Angela Knight requested that the friend take A.P. and her two sisters home with her so Angela and Jeffery could have a discussion. After the children had left, Angela and Jeffery discussed the accusations of A.P. As a result of the discussion, Angela and Jeffery decided to file for a divorce. The testimony of Angela Knight revealed that Jeffery Knight had agreed to give her a divorce if Angela would not prosecute him or seek to have him fired from his job relative to the sexual abuse of A. P.
¶ 4. Angela Knight and Jeffery Knight went to an attorney's office the next day. During the initial client interview conducted by the attorney's assistant, Angela Knight informed the assistant of the sexual abuse and her and Jeffery's desire for divorce, termination of parental rights, and an agreement not to prosecute. The evidence was uncontroverted that, during the interview with the assistant and the attorney, Jeffery Knight took no verbal affirmative action to deny the allegations of sexual abuse. Subsequently, the attorney reported the allegations of abuse to the Department of Human Services. The Department of Human Services investigated the report of abuse and as a result Jeffery Knight was indicted and later convicted for the charge of sexual battery.
I. WHETHER SUFFICIENT EVIDENCE WAS PRESENTED TO CONVICT KNIGHT ON THE INDICTED CHARGE.
II. WHETHER THE COURT ERRED IN DENYING KNIGHT'S MOTIONS FOR DIRECTED VERDICT, AND IN DENYING MOTIONS FOR A NEW TRIAL.
III. WHETHER THE PROSECUTION FAILED TO PRESENT A PRIMA FACIE CASE AND WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 5. Jeffery Knight's arguments commencing in issue one and concluding in issue three are based on lack of sufficiency and weight of the evidence. Challenges based on the sufficiency of the evidence require consideration of the evidence before the court when made, so that this Court must review the ruling on the last occasion the challenge was made at the trial level. McClain v. State, 625 So.2d 774, 778 (Miss.1993). This occurred when the trial court overruled Jeffery Knight's motion for JNOV. The Mississippi Supreme Court has stated, in reviewing an overruled motion for JNOV, that the standard of review shall be:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Knight's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. (citations omitted).
¶ 6. Here, the evidence was legally sufficient to find that Jeffery Knight committed sexual battery on his stepdaughter, A.P. A.P. testified that she was only thirteen at the time of the alleged incident, that she was asleep on the couch and awoke to find Jeffery Knight on top of her with his hand in her panties, and Jeffery Knight was performing digital penetration in her vagina. Subsequently, A.P. kicked Jeffery Knight and he retreated. The evidence consistent with the guilty verdict must be accepted as true. Id. Considering the elements of the crime along with all *1148 the evidence in the light most favorable to the verdict, the evidence is not such that reasonable jurors could only find Jeffery Knight not guilty. Under Miss.Code Ann. section 97-3-95 (Rev.1994), the following elements are listed in the crime of sexual battery:
(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
(a) Another person without his or her consent;
(b) A mentally defective, mentally incapacitated or physically helpless person;
(c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.
(2) A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.
Here, the testimony provided by A.P. revealed evidence of the elements necessary under the statute for the crime of sexual battery, and was legally sufficient to support the jury verdict that Jeffery Knight committed sexual battery. Moreover, it was sufficient to support the trial court's denial of Jeffery Knight's motion for JNOV. In a further attempt to devalue the testimony of A.P., Jeffery Knight argues that the evidence presented by A.P. at trial was insufficient because it was not corroborated by eyewitness testimony. No corroboration is necessary to obtain a conviction for sexual battery.
¶ 7. This state's supreme court has always held that the unsupported word of the victim of a sex crime is sufficient for conviction, unless it is substantially contradicted by other credible testimony or physical facts. Scott v. State, 728 So.2d 584, 586 (Miss.1998). The court in Christian v. State, 456 So.2d 729 (Miss.1984) affirmed a conviction where there was no evidence of external injury and only the word of the prosecutrix to prove guilt. In Otis v. State, 418 So.2d 65 (Miss.1982), the victim was a fifteen year old mentally impaired girl who did not report the rape for five weeks. There was no physical evidence, and the court found that her word was sufficient. Id. at 67.
¶ 8. This case presents no material contradiction to the child's testimony, and that testimony was corroborated. Angela Knight testified that when she confronted Jeffery Knight with the fact that he had digitally penetrated the vagina of A.P. he admitted that the accusations were true. Furthermore, the testimony of attorney Roger Tubbs and his assistant showed that at the time of the interview with Angela Knight and Jeffery Knight for divorce, Jeffery Knight made no affirmative denials of the sexual contact having occurred between himself and A.P. Additionally, attorney Tubbs testified that Jeffery Knight wished to have an agreement not to prosecute executed relative to his sexual contact with A.P. Furthermore, as aforementioned, A.P. testified that the person who was on top of her on the couch with his hands in her panties and his finger in her vagina on the morning of August 4, 1994, was Jeffery Knight, and the jury believed her. The Mississippi Supreme Court has held repeatedly that the credibility of a witness is a matter for the jury. Anderson v. State, 461 So.2d 716, 719 (Miss.1984); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983); Billiot v. State, 454 So.2d 445, 463 (Miss. 1984).
¶ 9. In Allman v. State, 571 So.2d 244 (Miss.1990), the defendant asked for a jury instruction that the uncorroborated word *1149 of the child victim was insufficient. The court upheld the trial judge's refusal of that instruction as an incorrect statement of law. Id.
¶ 10. Additionally, Jeffery Knight argues that the jury verdict was against the overwhelming weight of the evidence and requests a new trial. The Mississippi Supreme Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." McClain v. State, 625 So.2d 774, 781 (Miss.1993) (citations omitted); see also Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993) (stating that witness credibility and weight of conflicting testimony is left to the jury); Kelly v. State, 553 So.2d 517, 522 (Miss.1989) (stating that witness credibility issues are to be left solely to the province of the jury). Furthermore, "the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion." McClain, 625 So.2d at 781 (citing Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987)). The decision to grant a new trial "rest[s] in the sound discretion of the trial court, and the motion (for a new trial based on the weight of the evidence) should not be granted except to prevent an unconscionable injustice." Id. This Court will reverse only for abuse of discretion, and on review will accept as true all evidence favorable to the State. Id. With these principles of law in mind and the testimony presented at trial, this Court finds that the trial court did not err in denying Jeffery Knight's requests for directed verdict, JNOV, or a new trial.

IV. WHETHER THE TRIAL COURT ERRED IN REQUIRING THE JURY TO CONTINUE DELIBERATIONS.
¶ 11. Jeffery Knight argues that the trial court erred when it failed to administer what is known in Mississippi as the "Sharplin charge" after the jury reported that it wished to have refreshments provided during their deliberations. The State argues that Knight failed to object in a timely manner (i.e., at the trial) and having failed to object at trial, Knight is now procedurally barred from objecting on appeal. (citing Walker v. State, 729 So.2d 197, 202 (Miss.1998)) ("Failure to raise a contemporaneous objection to the judge's instruction procedurally bars Walker from arguing on appeal."); Smith v. State, 530 So.2d 155, 161-62 (Miss.1988) (citations omitted) ("It is elementary that, for preservation of error for review, there must be contemporaneous objections."). After having reviewed the record and applicable law we have determined that Jeffery Knight is procedurally barred from arguing this issue on appeal; however, for the sake of clarity we will continue and address the issue as if it were not barred.
¶ 12. The "Sharplin charge" which has been approved by the Mississippi Supreme Court on numerous occasions, is a device whereby deadlocked jurors are encouraged to continue to deliberate without being coerced into abandoning their individual beliefs and convictions. The Sharplin charge reads as follows:
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so. Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because *1150 of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976). See also Bolton v. State, 643 So.2d 942, 945 (Miss.1994). The record does not reflect that the jury had represented to the judge that they were deadlocked. The following dialogue occurred between the trial judge and the jury:
THE COURT: Ladies and gentlemen of the jury, first of all, I want you to understand that whatever I may say in the next few minutes is not intended to make you think that I am putting any pressure on you or forcing you in any way. You have been for some four hours now considering the verdicts in this case, and the bailiff had told me that you wanted a pot of coffee and some nabs, which is fine. We certainly can accommodate that. I would like for you to tell me what your numbered division is. Do not tell me that how it is divided but simply that it is six to six or five to seven or whatever the division is, how the numbers stand. Don't tell me how those numbers are divided but just
MALE JUROR: It was eleven to one.
THE COURT: Eleven to one. Now, does that division represent any change, in the numerical split that is, had there been any change in the last hour or so?
THE COURT: Pardon?
FEMALE JUROR: I think there's about to be. I think it's fixing to go another way.
THE COURT: All right. Well, that's all right. That's within your province and not mine. I understand that. On another subject. It's now 6:35 by my watch. Do you think thatand we can order out and get something to eat. My interest is in providing you whatever time necessary for you to reach conclusions in this case. If you think that can be done, and I will certainly make arrangements to have you fed if you want to eat. Now, I understood that you wanted some nabs but we can do better than that if you want to do that. If you do not, I'm certainly not going to insist, but I'll leave that up to you.
FEMALE JUROR: Did you want to know the number on both counts?
THE COURT: No, not really. I'm not trying toI do not want to make unnecessary inquiry into what you are considering back there. I'm going to ask you to go back to the jury room and continue deliberations. I'm going to ask one of the bailiffs to talk with you about whether or not you want to order lunch, I mean dinner. If you do, we'll make those arrangements. If you want nabs, we'll make those arrangements. All right. You may go back to the jury room.
The aforementioned statements from these jurors are contrary to Jeffery Knight's assertion of deadlock. The aforementioned dialogue revealed that communication lines were open among jurors and that there might even be a change in the near future; however, they wished to be furnished with some refreshments.
¶ 13. The decision to give the "Sharplin charge" is left to the discretion of the trial judge. Banks v. State, 394 So.2d 875, 877 (Miss.1981). We rule that there was not an abuse of discretion in this instance. As stated in Sharplin:
If the trial judge feels that there is a likelihood that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jurors: `Please continue your deliberations,' or he may give the following instruction set forth in the tentative draft of Mississippi Model Jury Instructions: [the Sharplin charge]
Sharplin, 330 So.2d at 596. Therefore, this assignment of error is without merit.
V. WHETHER KNIGHT'S RIGHT TO CONFRONTATION WAS VIOLATED BY THE ENTRY OF THE HEARSAY TESTIMONY OF ANGELA KNIGHT.

*1151 VI. WHETHER THE TRIAL COURT ERRED IN ITS RULING ALLOWING ANGELA KNIGHT'S HEARSAY TESTIMONY.
¶ 14. Jeffery Knight asserts as a fifth and sixth assignment of error that the testimony given by Angela Knight, mother of A.P. contained hearsay which violated Mississippi Rules of Evidence Rule 802 and should have been excluded.
¶ 15. Jeffery Knight argues that because Angela Knight testified to statements A.P. had made to Angela relative to the sexual contact initiated by Jeffery Knight that he was denied his right to confrontation. However, the testimony of Angela Knight not only revealed the conversation between her and A.P. relative to Jeffery Knight, but additionally, Angela Knight testified relative to her personal observations of the demeanor of Jeffery Knight and A.P. on the night of the incident, her conversations with Jeffery Knight, and conversations with attorney Roger Tubbs and his assistant.
¶ 16. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The right to confront and cross-examine witnesses and to call witnesses in one's own behalf has long been recognized as essential to due process. The United States Supreme Court further enumerated and stated that certain factors are essential to a fair trial. Among these are "[a] person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defensea right to his day in courtare basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Jeffery Knight was afforded the aforementioned elements in the present case.
¶ 17. Jeffery Knight was given every opportunity to cross-examine Angela Knight on the aforementioned issues. Additionally, A. P., the victim, testified to the sexual battery committed by Jeffery Knight, and Jeffery Knight cross-examined her relative to this testimony. As aforementioned, Jeffery Knight also attacks the admission of Angela Knight's testimony because it contained hearsay statements. However, this Court finds that the pertinent segments of hearsay testimony were properly admitted under the hearsay exception of Mississippi Rules of Evidence, Rule 803(25).
¶ 18. In 1991, Rule 803 was amended to include the tender years exception to the hearsay rule. Rule 803(25) states that:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
In order for an out-of-court statement to be admissible under Rule 803(25), the court must determine (1) that the declarant is a child of tender years and (2) that "the time, content, and circumstances of the statement provide substantial indicia of reliability...." The record reveals the trial judge properly followed the two-pronged process in determining admissibility required under Rule 803(25).
¶ 19. Jeffery Knight tries to argue that A.P.'s age at the time of the statements would exclude her testimony under the tender years exception; however, this determination must be made by the trial *1152 judge on a case-by-case basis. In Veasley v. State, No. 95-CT-00367, ¶ 16 (Miss. 1999), the supreme court clarified the "tender years" exception and held that a child under twelve is rebuttably presumed to be of tender years. When the individual is twelve or older, the trial court must make a factual determination whether the child is of tender years based on the individual's mental age. Id.
¶ 20. As required by Rule 803(25) a hearing was conducted outside the presence of the jury. During the hearing, Angela Knight went through her anticipated testimony. After having heard the testimony the trial judge determined that the testimony of Angela Knight was admissible under Rule 803(25). The trial judge proceeded to elaborate on those factors that he relied on relative to age and the indicia of reliability as it pertained to his determination to admit the testimony. At the time A.P. made the statements to her mom she was thirteen. The trial judge noted the age of A.P. and considered all of the testimony given by Angela Knight and properly held it was admissible. We find the foregoing assignments of error to be without merit.

VII. WHETHER THE COURT ERRED IN PERMITTING THE TESTIMONY OF ATTORNEY ROGER TUBBS AND HIS ASSISTANT.
¶ 21. Jeffery Knight asserts as a seventh assignment of error, that the trial court erred in allowing the testimony of attorney Roger Tubbs and his assistant relative to the communications held in his office. Jeffery Knight begins his argument by citing Upjohn Co. v. United States, 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) for the contention that a long-established rule of common-law states that an attorney is not permitted and cannot be compelled to testify as to communications made to him in his professional character by his client, unless the client consents. Jeffery Knight continues his argument by making reference to Rule 502 of the Mississippi Rules of Evidence. Under the Mississippi Rules of Evidence, Rule 502(b). That rule reads as follows:
A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.
Miss. R. Evid. 502(b). Confidential communications are those "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Miss. R. Evid. 502(a)(5).
Furthermore, Jeffery Knight argues that a common interest privilege existed which protected his communications with attorney Roger Tubbs and his assistant. Jeffery Knight cites the following to support his contention:
The District of Columbia court in In Re Sealed, 29 F.3d 715, 718 (D.C.Cir.1994) stated as follows:
the common interest privilege protects communications between a lawyer and two or more clients regarding a matter of common interest. In Re Auclair, 961 F.2d 65, 69 (5th Cir.1992) (privilege applies if "persons.... consult an attorney together as a group with interests seeking common representation").... *1153 Jeffery Knight continues his argument by citing case law which noted Rule 1.6 of the Rules of Professional Conduct as it relates to the attorney/client privilege. In light of all of the law cited by Jeffery Knight relative to the principles of the attorney/client privilege, in the case at bar, the record indicates that Jeffery Knight was not a client of attorney Roger Tubbs and, therefore, that crucial element necessary for the privilege to exist (i.e., being a client) is absent from the equation.
¶ 22. The testimony of Angela Knight, attorney Roger Tubbs, and the assistant of Roger Tubbs revealed that Angela Knight was Tubb's client. Additionally, attorney Roger Tubbs testified that he had documents signed by Jeffery Knight which stated that Tubbs was representing Angela Knight and not Jeffery Knight, and that Tubbs encouraged Jeffery Knight to seek independent counsel. With this relationship in mind, the record further reveals that during the testimony of Angela Knight she waived the attorney/client privilege. Jeffery Knight concludes his argument by asserting that the court erred in not suppressing the statements of attorney Roger Tubbs and his assistant under Mississippi Rule of Evidence 403, which authorizes the trial court to exclude relevant evidence if the probative value is substantially outweighed by the danger of unfair prejudice. Jeffery Knight fails to cite legal authority in support of this particular assignment of error. The supreme court has repeatedly stated that it is the appellant's duty to provide authority in support of his claims of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997). Accordingly, Jeffery Knight's failure to cite authority for this issue preludes further appellate review.
¶ 23. Notwithstanding the issue of attorney/client privilege, this Court finds that even without the testimony of the attorney and his assistant the testimony presented by A.P. would have been enough for a jury to have convicted Jeffery Knight of sexual battery. This Court finds this issue to be without merit.

VIII. WHETHER COMMENTS MADE BY THE STATE DURING CLOSING ARGUMENT REQUIRES REVERSAL.
¶ 24. Jeffery Knight asserts as an eighth assignment of error that prosecutorial comments made during closing argument requires reversal. Knight further elaborates by stating "[p]rosecutors are not given full reins to gain victory and are limited by the zeal than [sic] can use as evidenced by (the) following: that a prosecutor `while he may strike hard blows, is not at liberty to strike foul ones,' it [is] left to the lower courts to discern what sort of misconduct rises to the level of reversible error." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)(overruled on other grounds). Knight contends that in the case at bar, he was deprived a fair trial because the prosecutor "injected remarks intended to inflame and gave his opinion as to guilt." Additionally, Knight asserts that the prosecution misstated evidence during his closing argument.
¶ 25. The problem with the argument presented by Knight is that he failed to contemporaneously object to any of the prosecutor's remarks. We require a contemporaneous objection to the allegedly prejudicial remarks. May v. State, 569 So.2d 1188, 1190 (Miss.1990); Dunaway v. State, 551 So.2d 162, 164 (Miss.1989); Marks v. State, 532 So.2d 976, 984 (Miss. 1988).
It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial.
*1154 Box v. State, 610 So.2d 1148, 1154 (Miss. 1992) (quoting Blackwell v. State, 44 So.2d 409, 410 (Miss.1950)).
[I]t is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court. The trial judge first determines if the objection should be sustained or overruled. If the argument is improper, and the objection is sustained, it is the further duty of trial counsel to move for a mistrial. The circuit judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment.
Johnson v. State, 477 So.2d 196, 209-10 (Miss.1985).
¶ 26. In this case, the lower court instructed the jury that any arguments, statements, or remarks by counsel were not evidence and if any statement were made that had no basis in the evidence, then the jury should disregard the remark. Clearly, any error that occurred was not so extensive or prejudicial as to constitute fundamental error. The Court is mindful that Jeffery Knight made an objection and moved for a mistrial relative to statements made by the prosecutor during closing argument. This motion was brought after the jury had been excused from the courtroom to deliberate on a verdict and this was simply too late. In Herrington v. State, 690 So.2d 1132, 1139 (Miss.1997), the supreme court acknowledged that a trial judge can only render a determination of prejudice if the party makes a timely objection and motion for a mistrial. The court further proclaimed that "timeliness means the objection and motion must be made contemporaneously with the allegedly improper utterance. This is well-known as the `contemporaneous objection rule'. Contemporaneousness is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance." Id. This Court determines that Jeffery Knight waived this issue in the court below and forfeited any error on appeal to this Court.

IX. WHETHER THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ISSUES GREATLY PREJUDICED KNIGHT AND RENDERED HIS RIGHT TO A FAIR TRIAL IMPOSSIBLE UNDER THE CIRCUMSTANCES.
¶ 27. Jeffery Knight argues as a ninth assignment of error that his right to a fair trial was violated due to the cumulative effect of the alleged errors at trial. This Court may reverse a conviction and/or sentence based upon the cumulative effect of errors that independently would not require reversal. Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992); Hansen v. State, 592 So.2d 114, 153 (Miss.1991). We have conducted a thorough review of the record, the briefs, and the argument and determined that there are no individual errors which require reversal of Jeffery Knight's conviction. While his trial was not perfect, we do not find any errors, either individually or cumulatively, which warrant reversal. A criminal defendant is not entitled to a perfect trial, only a fair trial. Sand v. State, 467 So.2d 907, 911 (Miss.1985). Therefore, we find this assignment of error to be without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.